UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:24-cr-00009-JMS-MKK |
| ) | |
| MAXIMILIANO PILIPIS, ) | |
| ) | |
| Defendant. ) | |

**MAXIMILIANO PILIPIS' MOTION TO FULLY DISMISS COUNTS 1-5 AND DENY GOVERNMENT'S PENDING APPLICATION FOR A RESTRAINING ORDER, AND THEREBY TERMINATE THE EXISTING TRO**

Mr. Pilipis files this Motion to respectfully ask the Court to resolve two pending motions that are fully briefed and ready for resolution—(1) to fully grant Mr. Pilipis' Motion [Filing No. 77.] and dismiss Counts 1-5 in their entirety; and (2) to deny the government's pending application for a post-indictment restraining order [Filing No. 73.] (the "Application") which would in turn automatically dissolve the existing temporary restraining order (TRO) against Mr. Pilipis' property by the TRO's own terms. [Filing No. 75.] Mr. Pilipis respectfully asks the Court to resolve these pending motions without further briefing: The government chose to forego its opportunity to further brief these issues by defying the Court's order directing it to do so [Filing No. 99.], and every day that goes by with Mr. Pilipis's assets restrained, he faces additional significant personal harm.

Mr. Pilipis has persevered in the face of the government's restraints on effectively all of his financial assets. The restraints were always astronomical, overbroad, and unjust. [Filing No. 80 at 18.] They are doubly so now. The government's position is, apparently, that the Court's Order changed nothing in this case, and the Court has no power to act. That position is untenable,

1

contrary to law, and frankly outrageous. It bears repeating that the Court *found in favor of Mr. Pilipis and granted his* Motion to Dismiss. [Filing No. 98.] The government may not act as if it prevailed on the motion and is therefore somehow entitled to keep its restraints on all of Mr. Philips's assets. Denying the government's fully-briefed, pending Application and thereby dissolving the TRO will allow Mr. Pilipis access to virtual currency that is rightfully his. As set forth in Mr. Pilipis's opposition to the Application [Filing No. 80.], the government lacks *any* basis to restrain those assets regardless of the Court's February 13, 2025 Order, and the futility of the government's position is all the clearer now that Counts 1-5 have been dismissed.\*

The government obtained a grand jury indictment against Mr. Pilipis for money laundering in violation of 18 U.S.C. § 1957 in January 2024. [Filing No. 6.] In May 2024, the government obtained a 14-day TRO (temporarily extended multiple times) barring Mr. Pilipis from moving and converting his virtual currency. [Filing No. 42; Filing No. 47; Filing No. 56; Filing No. 62.] On October 16, 2024, the government obtained a superseding indictment charging Mr. Pilipis with five counts of money laundering in violation of 18 U.S.C. § 1957 and two counts of willful failure to file tax returns in violation of 26 U.S.C. § 7203. [Filing No. 66.] The following day, October 17, 2024, the government filed its Application for a post-indictment restraining order under 21 U.S.C. § 853(e), which relied on the five money-laundering counts as predicates. [Filing No. 73.]

As the government admits, a TRO ordinarily "'shall expire not more than fourteen days after the date on which it is entered,'" and the TRO in place when the government filed its

---

\* The TRO is the *only* thing preventing Mr. Pilipis from using his virtual currency. The only other existing restraints on Mr. Pilipis' property—the criminal and civil seizure warrants in No. 1:24-mj-00449-MKK and No. 1:23-cv-02081-JMS-MJD ("Forfeiture Case")—apply only to certain of Mr. Pilipis' accounts. In accordance with the Court's February 26, 2025 Orders in this case and the Forfeiture Case, Mr. Pilipis will file separate motions seeking to set aside the seizure warrants, release the physical items the government has seized, and modify the conditions of his release.

2

restraining-order application was set to expire on October 21, 2024. [Filing No. 75 (quoting 21 U.S.C. § 853(e)(2).] To avoid the government taxing the Court's and parties' resources with reapplications for the TRO every fourteen days, the parties agreed to extend the TRO "*pending the Court's ruling on the government's application for a post-indictment restraining order.*" [Filing No. 75 at 2 (emphasis added).]

Mr. Pilipis moved to dismiss the indictment's five money-laundering counts and opposed the government's application for a post-indictment restraining order on October 25, 2025. [Filing No. 77; Filing No. 80.] On February 13, 2025, this Court granted Mr. Pilipis' Motion to Dismiss "as to any portions of Counts 1 through 5 that are based on specified unlawful conduct – violations of § 1960 – that took place before September 14, 2013." [Filing No. 98 at 20.] The Order recognized this left at least two remaining issues undecided—(1) "whether any portions of Counts 1 through 5 remain – *i.e.*, whether AurumXchange operated after the September 14, 2013 registration deadline," and (2) whether the Court's Order requires denial of the government's pending Application (which is predicated on the now-dismissed counts). [Filing No. 98 at 20.] The Court thus set a hearing on these issues, and ordered the parties to file statements addressing the issues in advance of the hearing. [Filing No. 98 at 20-21; Filing No. 99.] Mr. Pilipis complied with this directive, and his statement explained, *inter alia*, (1) that Counts 1-5 of the Superseding Indictment should be dismissed in full because it is undisputed that AurumXChange did not operate after September 14, 2013; and (2) that the government's pending Application should be denied. [Filing No. 108 at 6-8.]

The government chose not to comply with the Court's order. As the Court observed, the government did "not state its position regarding whether any specified unlawful conduct took place before September 14, as ordered to do so by the Court." [Filing No. 111 at 1.] Nor did the

3

government comply with the Court's directive to address how the February 13 dismissal order affected the government's Application. [Filing No. 105.]

Instead, the government filed a motion to vacate the scheduled hearing that took the remarkable and unsupported position that the government stripped this Court of jurisdiction to rule on its pending Application by taking an interlocutory appeal of the February 13 dismissal order—which the government took the *day before* it filed its motion to vacate, and *less than two weeks after the Court's dismissal order*. [Filing No. 100; Filing No. 105.] The upshot of the government's position: The government has *unilaterally* extended the current TRO, which again the government concedes is ordinarily limited to *14 days*, to bar Mr. Pilipis from using *his* property, which he needs to pay for defense counsel and living expenses, for the entirety of the government's interlocutory appeal—which could easily take a *year or more*.

That is simply not how interlocutory appeals work. As Mr. Pilipis has explained [Filing No. 108 at 3-6], the government failed to identify any authority supporting its theory that interlocutory appeals automatically pause the underlying case. On the contrary, that theory is squarely foreclosed by the Seventh Circuit's precedents, which correctly recognize that an interlocutory appeal only bars the district court from altering the "*decision that is under appellate review*." *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008) (emphasis added). That is why "an appeal taken from an interlocutory decision does not prevent the district court from finishing its work and rendering a final decision." *Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006).

The Court gave the government a chance to explain—indeed, *ordered* the government to explain—why the Court should not dismiss Counts 1-5 in their entirety and deny the government's Application for a post-indictment restraining order. The government refused to do so. And the

4

government could not do so. The government has repeatedly acknowledged that AurumXChange ceased operating sometime in June 2013, which requires that Counts 1-5 be fully dismissed. [Filing No. 108 at 6-7.] In turn, the government's Application must be denied because the government has no qualifying offense under 21 U.S.C. § 853(e)(1)(A) (in addition to the further independently sufficient reasons for denying the application that Mr. Pilipis has outlined). [Filing No. 108 at 8; Filing No. 80 at 12-19.]

If the government wishes to restrain Mr. Pilipis from using his property during the pendency of its appeal, there is a way to make that request. The government can take an interlocutory appeal of an order denying its Application, *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998), and can ask this Court (and then the Seventh Circuit) to stay that order pending appeal. Of course, such a "stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks and citation omitted). The government would thus need to satisfy the demanding criteria for stays pending appeal set forth in *Nken*—(1) that the government "has made a strong showing that he is likely to succeed on the merits," (2) that the government will be irreparably injured absent a stay, (3) that issuance of the stay will not substantially injure Mr. Pilipis, and (4) that the public interest favors a stay. *Id.* at 434 (quotation marks and citation omitted).

The government's position is nothing more than a misplaced attempt to evade these well-established requirements. The Court should reject the government's position as a meritless gambit. Mr. Pilipis' motion to dismiss and the government's Application for a post-indictment restraining order are fully briefed and ready for resolution. The Court should resolve those motions.

Respectfully submitted,

*/s/ Josh Minkler*
Josh Minkler (Atty. No. 18483-49)
Kathleen L. Matsoukas (Atty. No. 31833-49)
Alyssa Hughes (Atty. No. 34645-71)
Kian J. Hudson (Atty. No. 32829-02)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: 317-236-1313
Facsimile: 317-231-7433
Email:  Josh.Minkler@btlaw.com
            Kathleen.Matsoukas@btlaw.com
            Alyssa.Hughes@btlaw.com
            Kian.Hudson@btlaw.com

Todd Foster
Todd Foster Law Group
601 Bayshore Blvd. Suite 615
Tampa, FL 33606
Telephone: 813-565-0600
Email: tfoster@tfosterlawgroup.com
*Admitted pro hac vice*

David M. Garvin
David M. Garvin, P.A.
2333 Ponce De Leon Blvd. Ste 314
Coral Gables, FL 33134
Telephone: 305-371-8101
Email: dgarvin@garvin.law
*Admitted pro hac vice*

*Attorneys for Defendant Maximiliano Pilipis*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a copy of the foregoing has been served on all counsel of record via the Court's electronic filing system on this 27th day of February, 2025.

                                              */s/ Josh Minkler*
                                              Josh Minkler